**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MICHAEL A. SERGER,

                Plaintiff,

vs.

DEPUTY SHERIFF ADAMS, et al.,

                Defendants.

Case No. 2:08-cv-01480-KJD-PAL

**ORDER**

(IFP App - Dkt. #35)
(IFP App - Dkt. #38)

Plaintiff Michael A. Serger is proceeding in this action *pro se* and has requested authority pursuant to 28 U.S.C. § 1915 to proceed *in forma pauperis.* Pursuant to the district judge's Order (Dkt. #30), Plaintiff submitted a Second Amended Complaint (Dkt. #32). This proceeding was referred to this court by Local Rule IB 1-9.

**I.    *In Forma Pauperis* Application**

Plaintiff has submitted the affidavit required by § 1915(a) showing an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed *in forma pauperis* will be granted pursuant to 28 U.S.C. § 1915(a). The court will now review Plaintiff's Second Amended Complaint.

**II.   Screening the Complaint**

Upon granting a request to proceed *in forma pauperis*, a court must additionally screen a complaint pursuant to § 1915(a). Federal courts are given the authority dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915(a), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the

deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 129 S.Ct. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 1949. Secondly, where the claims in the complaint have not crossed the line from plausible to conceivable, the complaint should be dismissed. *Twombly,* 550 U.S. at 570.

**I.     Factual Allegations.**

Plaintiff's Second Amended Complaint (Dkt. #32) alleges that Plaintiff was arrested on December 31, 2006, when he contacted police to alert them to an ongoing burglary at his uncle's house. Plaintiff claims the police mistook his actions and arrested him. He was released on bail. On April 20, 2007, Plaintiff suffered a stroke and was hospitalized. While comatose, Plaintiff missed a court appearance and was arrested upon his release from the hospital. In June 2007, while an inmate at the Sutter County Jail, he had not fully recovered from his stroke and was unable to speak well. His remarks were often not responsive to questions asked. He received no treatment while at the jail. In fact, he was maintained in an isolation cell for twenty-three hours per day. Plaintiff asserts that this lack of treatment, coupled with the isolation, compounded his sensory and social deprivation and worsened his mental and physical condition. Although Plaintiff had and showed the jail staff a report of a CT scan on May 4, 2007, showing continued abnormal activity, jail staff said it was only an

/ / /

1    alleged stroke, and they treated Plaintiff as if he had not suffered a stroke. Correctional staff declined
2    or refused to address Plaintiff's medical needs.
3    　　　　While incarcerated, Plaintiff was brutalized by a number of correctional officers on three
4    occasions. When there were no witnesses, Defendant Adams came to the holding cell under the
5    courtroom laughing. He told the other prisoners to leave, and Plaintiff asked for his attorney. As
6    Plaintiff was escorted to the courtroom in shackles, Defendant Adams struck Plaintiff hard in the lower
7    back twice. When Plaintiff reached the courtroom, he tried to tell the judge what occurred, but
8    because of the after-effects of his stroke, Plaintiff could not communicate the words properly, and only
9    jumbled sounds came out.
10   　　　　On August 6, 2007, Plaintiff was being held in the courthouse basement after court. Defendant
11   Barnec led Plaintiff back to a bench, and Plaintiff was unsteady in sitting down. Defendant Barnec
12   slammed Plaintiff down and struck him in the right backside in front of at least eight inmates. Plaintiff
13   said the strike felt like it was made with something metal, and a witness told him Defendant Barnec hit
14   him with a ring of keys. Plaintiff could not properly ambulate for five days after the incident. He was
15   provided no medical evaluation or assistance. Defendant Barnec told another inmate Plaintiff was
16   faking his disability, and Defendant Barnec felt hostile toward Plaintiff. The same inmate also reported
17   being similarly abused by Defendant Barnec.
18   　　　　On November 5, 2007, Defendant Kehoe grabbed one of Plaintiff's arms, and another guard
19   grabbed the other. They placed chains on Plaintiff's hands and belt. Four people, including
20   Defendants Kehoe and Simpson, dragged Plaintiff from his cell to the SHU[1] instead of to the visitation
21   area to see his expected visitor, Scott Kirchner. Defendants Kehoe and Simpson took Plaintiff's legal
22   papers, grabbed his hair, and hit him on the right side of the face three to five times. Sometime during
23   the attack, Plaintiff's ribs were injured. Plaintiff was rendered unconscious from the attack, and he
24   remained on the SHU floor for about nine hours. Plaintiff believes he suffered another stroke as a
25   result of the blows to his head. He received no medical attention though he recalls someone brought
26   him a hamburger during lunch while he was on the floor. He was finally able to get onto his bed.

---

[1] An "SHU" is a Security Housing Unit.

3

1 Later, he learned he had three broken ribs on the left side, a broken right jaw, and injury to his right hip
2 and pelvis.  He received no medical treatment, and as a result of the broken jaw, Plaintiff suffered
3 malocclusion, bite deficits, gum damage, and tooth loss.

4 Plaintiff was ultimately transferred to Napa State Hospital in November 2007.  He was suffering
5 physical injuries and from a cognizance disorder which Plaintiff believes was caused by a second
6 stroke brought on by the physical attacks he suffered at the hands of Defendants.

## II.  Plaintiff's Legal Claims.

To state a claim under section 1983, a plaintiff must allege that a right secured by the Constitution has been violated, and the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42 (1988) (citation omitted).  States and state officers sued in their official capacity are not "persons" for the purposes of a section 1983 action, and generally, they may not be sued under the statute.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  Section 1983 does allow suits against state officers in their individual capacities.  *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Likewise, local governments, such as municipalities, can be sued under § 1983, but only for "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or for a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision[-]making channels." *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690-91 (1978).  Municipal officers may be sued in their official capacities, but the plaintiff must prove that any constitutional violations occurred as a result of an official policy or custom, *Monell*, 436 U.S. at 690, or through a failure to train municipal employees adequately, *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989).

Plaintiff's Complaint asserts claims against Defendants under 42 U.S.C. § 1983 in their official and individual capacities.  Plaintiff asserts that the deputies and correctional officers abused Plaintiff pursuant to their official policy and as part of a course of conduct that reflected their practice which was so permanent and settled to constitute a custom with the force of law.  Plaintiff contends the Sheriff's Department operates the Sutter County Jail under a policy whereby the civil rights of inmates are routinely violated, where correctional staff apply mental and physical abuse upon inmates for the intentional purpose of controlling them by force and harming them, and inmates are denied timely

1 access to medical treatment.  The Sheriff's Department instituted and permitted a policy allowing
2 correctional officers to employ excessive force.

3       **A.     Eighth Amendment Claim.**

4       Plaintiff asserts Defendant Sutter County's policy to disregard inmate health, safety, and
5 welfare amounts to deliberate indifference to Plaintiff's right to be free from cruel and unusual
6 punishment.  The Eighth Amendment prohibits the imposition of cruel and unusual punishments and
7 "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency."
8 *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A detainee or prisoner's claim of inadequate medical care
9 does not constitute cruel and unusual punishment unless the mistreatment rises to the level of
10 "deliberate indifference to serious medical needs." *Id.* at 106.  The "deliberate indifference" standard
11 involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms,
12 "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (*citing Wilson v. Seiter*, 501 U.S.
13 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind,"
14 which entails more than mere negligence, but less than conduct undertaken for the very purpose of
15 causing harm. *Farmer*, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent
16 manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

17       In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's
18 civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere
19 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton*
20 *v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle*, 429 U.S. at 105-06.  "[A]
21 complaint that a physician has been negligent in diagnosing or treating a medical condition does not
22 state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does
23 not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429
24 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin v.*
25 *Smith*, 974 F.2d 1050, 1050 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*,
26 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Even gross negligence is insufficient to establish
27 deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th
28 / / /

1   Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of
2   deliberate indifference.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

3         Delay of, or interference with, medical treatment can also amount to deliberate indifference.
4   *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir.
5   2002); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th
6   Cir. 1996); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *McGuckin v. Smith*, 974 F.2d 1050,
7   1059 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th
8   Cir. 1997) (en banc); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Where the
9   prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the
10  prisoner must show that the delay led to further injury.  *See Hallett*, 296 F.3d at 745-46; *McGuckin*, 974
11  F.2d at 1060; *Shapley v. Nev. Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per
12  curiam).

13        Plaintiff asserts that after he was attacked by Defendant Adams in June, he was not taken for
14  medical treatment or evaluated as he should have been, particularly given his recent stroke, of which
15  prison officials were aware.  He was not afforded any type of therapy to help him regain control of his
16  speech or to increase the coordination between his thoughts and his spoken words.  The isolation and
17  attacks by Defendants caused damage to Plaintiff's physical and mental well-being.  The court finds
18  Plaintiff has stated a claim upon which relief can be granted against Defendants Adams, Barnec,
19  Simpson, and Kehoe in both their individual and capacities as well as against Defendants Sutter County
20  and Sutter County Sheriff's Department for violations of Plaintiff's Eighth Amendment rights.

21        **B.**    **First Amendment Claim.**

22        Plaintiff's second cause of action alleges that Defendant Sutter County retaliated against
23  Plaintiff in violation of his First Amendment rights.  Plaintiff asserts that the Sutter County Jail has a
24  policy to deprive inmates of their various civil rights, and this policy was promulgated at the highest
25  level of county government and enacted by officials in the jail.  Plaintiff alleges he was retaliated
26  against by prison officials after complaining of abuse by being placed in isolation, having his privileges
27  removed, and by acts of physical and psychological torture.
28  / / /

6

### C. Violation of Bane Act, Cal. Civ. Code § 52.

Plaintiff alleges that the Individual Defendants interfered with and threatened to interfere with the exercise or enjoyment of Plaintiff's rights secured by federal and state law. Plaintiff asserts that Defendants exhibited discriminatory animus and/or intent. The Bane Act, codified at § 52 of the California Civil Code, provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of a person's legal rights, that person may bring a civil action for damages. *See* Cal. Civ. Code § 52.1. Additionally, the California Supreme Court has held that any person may bring a claim under this section, not only those who belong to a protected class. *Venegas v. County of Los Angeles*, 87 P.3d 1, 13 (Cal. 2004) (noting that the language of section 52.1 provides remedies for certain misconduct that interferes with federal or state laws, if accompanied by threats, intimidation, or coercion). Here, Plaintiff has alleged that his constitutional and other rights were violated and that the individual Defendants used threats and intimidation to effectuate such a deprivation. Plaintiff has stated a claim under the Bane Act.

### D. Violation of the Americans with Disabilities Act Claim.

Plaintiff alleges that he was discriminated against based upon his mental disability resulting from his stroke and exacerbated by the beatings he suffered. He was denied reasonable accommodation for his mental and physical disabilities, including his diminished ability to speak. Plaintiff was discriminated against for reporting the ADA violations he suffered, and he was retaliated against for unsuccessfully seeking accommodations for his disability.

In order to state a claim under the ADA for failure to accommodate, a plaintiff must show that (a) he is an individual with a disability; (b) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (c) he was excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (d) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) (*citing McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)). Plaintiff alleges he was disabled and that he was excluded from receiving health treatment and diagnostic care and treatment by the prison because of his disability. He also claims he was denied a reasonable

accommodation for his mental and physical disabilities, including his diminished ability to speak. Plaintiff has stated a claim for failure to accommodate under the ADA.

Additionally, the ADA prohibits retaliation against individuals who oppose unlawful acts under the ADA. 42 U.S.C. § 12203. Here, Plaintiff claims that he was punished and deprived of privileges for reporting the ADA violations he suffered. Plaintiff has stated a claim for retaliation under the ADA.

### E.  Infliction of Emotional Distress Claim.

Plaintiff alleges that the deliberate or negligent acts of individual Defendants were undertaken with the intent to cause Plaintiff extreme emotional distress. Plaintiff alleges Defendants had a specific intent to harm Plaintiff, or they acted with reckless disregard toward Plaintiff's rights as an inmate and a human being. Plaintiff asserts the acts of the individual Defendants amount to torture, are outside the bounds of common decency and would cause any person in Plaintiff's position to suffer severe emotional distress.

In order to state a claim for intentional infliction of emotional distress, California law requires a plaintiff must allege (a) extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (b) the plaintiff's suffering severe or extreme emotional distress; and (c) actual or proximate causation of the emotional distress by the defendant's outrageous conduct. *See Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1607 (Cal. App. 2d Dist. 2009) (*citing Hailey v. Cal. Physicians' Svs.,* 158 Cal.App.4th 452, 473-74 (Cal. App. 4th Dist. 2007). Accepting Plaintiff's allegations as true, he has stated a claim for intentional infliction of emotional distress.

### F.  Battery Claim.

Plaintiff alleges that Defendant Adams battered Plaintiff by hitting him twice in the lower back on June 11, 2007. He asserts Defendant Barnec battered him in front of other witnesses on August 6, 2007. And he asserts that Defendants Kehoe and Simpson, along with two other Doe Defendants hit Plaintiff mutltiple times on November 5, 2007, after dragging Plaintiff from his cell, rendering him unconscious, breaking his jaw and three ribs, and seriously bruising him. Plaintiff believes the November 5, 2007, incident caused a further stroke and/or brain damage.

In order to state a claim for battery, a plaintiff must show an intentional and offensive touching done without the plaintiff's consent. *See Kaplan v. Mamelak*, 162 Cal. App. 4th 637, 646 (Cal. App. 2d Dist. 2008). Here, Plaintiff alleges he was battered by Defendant Adams on the lower back on June 11, 2007 in the basement of the courthouse, outside the view of other inmates. He alleges Defendant Barnec battered him in the basement under the courthouse while Plaintiff was shackled in front of a number of inmates. He also alleges that on November 5, 2007, Defendant Kehoe, Defendant Simpson, and three other Doe Defendants hit Plaintiff multiple times after dragging him from his cell, rendering him unconscious and breaking his jaw and three ribs and seriously bruising him in an attempt to prevent Plaintiff from making further complaints. Accepting these allegations as true, Plaintiff has stated a claim for battery.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's request to proceed *in forma pauperis* is GRANTED. Plaintiff shall not be required to pay the filing fee of three hundred fifty dollars ($350.00).

2. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This Order granting leave to proceed *in forma pauperis* shall not extend to the issuance of subpoenas at government expense.

3. The Clerk of the Court shall file the Complaint and shall issue Summons to Defendants, and deliver the same to the U.S. Marshal for service. Plaintiff shall have twenty days in which to furnish the U.S. Marshal with the required Form USM-285. Within twenty days after receiving from the U.S. Marshal a copy of the Form USM-285, showing whether service has been accomplished, Plaintiff must file a notice with the court identifying whether defendant was served. If Plaintiff wishes to have service again attempted on an unserved defendant, a motion must be filed with the court identifying the unserved defendant and specifying a more detailed name and/or address for said defendant, or whether some other manner of service should be attempted. Pursuant to

///

|   |   |   |
|---|---|---|
| 1 |   | Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within |
| 2 |   | 120 days from the date this order is entered. |
| 3 | 4. | From this point forward, Plaintiff shall serve upon Defendants, or, if appearance has |
| 4 |   | been entered by counsel, upon the attorney(s), a copy of every pleading motion or other |
| 5 |   | document submitted for consideration by the court.  Plaintiff shall include with the |
| 6 |   | original papers submitted for filing a certificate stating the date that a true and correct |
| 7 |   | copy of the document was mailed to the defendants or counsel for the Defendants.  The |
| 8 |   | court may disregard any paper received by a District Judge or Magistrate Judge which |
| 9 |   | has not been filed with the Clerk, and any paper received by a District Judge, Magistrate |
| 10 |   | Judge, or the Clerk which fails to include a certificate of service. |

Dated this 27th day of October, 2011.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE