1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

MICHAEL A. SERGER,

    Plaintiff,

v.

DEPUTY SHERIFF ADAMS, *et al.*,

    Defendants.

Case No. 2:08-CV-01480-KJD-PAL

**ORDER**

    Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (#45).  Plaintiff filed a response in opposition (#50/54/55) to which Defendants replied (#56).

I.  Background

    According to the allegations of the complaint, Plaintiff Michael Serger ("Serger") was arrested on December 31, 2006, when he contacted the police to alert them of an ongoing apparent burglary at his uncle's house.  They mistook his actions and arrested him.  He was released on bail.  On April 20, 2007, Serger had a serious stroke and was hospitalized after he collapsed.  Comatose for a period while in the hospital, he missed a court appearance and was arrested after his release.  In June, 2007, when Plaintiff was an inmate in the Sutter County Jail, ("SCJ") he still suffered serious effects from the stroke.  Serger was unable to adequately communicate verbally, among other

1  symptoms. His words did not match his thoughts, and his remarks were not always responsive to

2  questions asked. Although intensive treatment after his stroke could have improved this problem, he

3  did not receive it or any treatment at the jail.

4       It is alleged that while in the SCJ, Plaintiff was wantonly and viciously brutalized by

5  correctional officers on three significant occasions.  Correctional officer ("CO") Adams attacked him

6  soon after he arrived at the jail on or about June 11, 2007.  When there were no witnesses, CO

7  Adams came down to the holding cell under the courtroom to escort Plaintiff to his hearing.  As he

8  was ascending the stairs to the courtroom, Adams unexpectedly and for no reason struck him hard in

9  the lower back, two times.

10       When he reached the courtroom in extreme pain, he tried to say "Adams hit me" but he could

11  not say words.  His brain knew them but his mouth just made jumbled sounds.  He could not

12  communicate to the judge that Adams had hit him, or even participate in the hearing.  He was

13  obviously agitated so the deputies dragged him out of the courtroom and shoved him back to the jail

14  cell.  Lacking a mirror or reflection surface, he was unable to see the result of the blows and unable

15  to let any other staff know he was in pain and needed help.

16       It is further alleged that Plaintiff suffered a second beating on August 6, 2007, when was

17  being held in the basement of the courthouse after he came from a court hearing.  CO Barnec was

18  leading Plaintiff back to the detention bench.  Plaintiff was unsteady in attempting to sit down.

19  Defendant Barnec slammed Plaintiff down with great force and struck him in the right backside in

20  front of at least eight inmates.  After the battery, Plaintiff was somehow able to hobble back to his

21  cell, but he could hardly walk after that. He was not physically able to leave his cell for about five

22  days.

23       Although his disability was obvious to correctional staff, he was provided no assistance and

24  no medical evaluation.  Barnec told another inmate, James Katz, he thought Serger was faking his

25  disability and had a lot of hostility toward him.  Rather than place him in a medical unit where he

26  could obtain stroke treatment and therapy, Plaintiff was maintained in an isolation unit.  Inmates in

this part of the jail were kept in their cells for 23 hours each day and only allowed out for an hour to shower, phone, watch television, exercise, and use the day room facilities.  Coupled with the complete denial of stroke rehabilitation treatment therapy and services, the isolation compounded Plaintiff's sensory and social deprivation and worsened his mental and physical condition. Under these conditions, he would have declined even without the guards brutalizing him.

Although he showed staff a CT scan on 5/4/2007 showing continuing abnormal activity, jail staff said it was only an alleged stroke, and he was treated as if nothing of that sort had occurred less than two months before.  During his entire incarceration, correctional staff declined or refused to address Plaintiff's serious and urgent medical needs.  He was not provided immediate stroke treatment when showing symptoms, although it is well known the first few hours after stroke are critical.  They kept him in isolation, and it was five or so days before he could move well.  Inmates are in view of the guards, but no one came to offer assistance.

Plaintiff was quite ill by the time he finally was transferred to Napa State Hospital in November 2007.  He was suffering from physical injuries and from a cognizance disorder resulting from what he believes to be a second stroke brought upon by the multiple physical strikes he had been enduring.

It is further alleged that on November 5, 2007, Plaintiff was again beaten.  He had been waiting for an expected visitor who had come to help him with his complaints.  He had his legal papers with him, ready to be escorted by CO's to the visit.  Rather than take him to a visit, they jumped on him.  The leader, Sgt. Kehoe, grabbed one arm and another officer grabbed the other one. The CO's, including Kehoe and Defendant Simpson, put chains on his hands and belt and dragged him to his cell in the SHU.  They snatched away his legal papers, and then Kehoe grabbed him by his hair, holding it, and hit him on the right side of his face 3 to 5 times.  Initially, he was hit in the jaw and knocked unconscious.  During the attack several ribs were broken.

After the beating, Plaintiff lay on the floor for about nine hours, not conscious.  He alleges that he had a further stroke from the blow to the head. He was provided no medical attention.  He

1   could not arise and he remembers someone bringing him a hamburger and giving it to him while he

2   was still on the floor during lunch. Finally, he was able to get up onto his bed.  Later he learned he

3   had three broken ribs on the left side, a broken right jaw and some injury to right hip and pelvis.

4   Like his other injuries, the broken jaw was not treated.  Ultimately, he suffered malocclusion, bite

5   deficits, gum damage and tooth loss.

6          Plaintiff filed the present action as a *pro se* prisoner on July 26, 2008.  Eventually, Plaintiff

7   was released from custody.  Plaintiff then found counsel who filed the present second amended

8   complaint (#32) on June 30, 2009.  The magistrate judge granted his motion to proceed *in forma*

9   *pauperis* on January 25, 2012.

10         The second amended complaint alleges claims for violations of his civil rights pursuant to 42

11  U.S.C. § 1983 for the attacks and failure to treat his medical conditions, retaliation for exercise of his

12  First Amendment rights for complaining of the abuse, violation of the Bane Act (a California

13  statutory violation), violation of the Americans with Disabilities Act ("ADA"), infliction of

14  emotional distress and battery.  Defendants have now moved to dismiss the action for failing to serve

15  the complaint within one hundred and twenty (120) days, failing to exhaust his administrative

16  remedies, failing to comply with the Government Tort Claims Act, and failure to state a claim upon

17  which relief may be granted.[1]

18  II.  Failure to Exhaust Administrative Remedies

19         The Prison Litigation Reform Act of 1994 requires that a prisoner exhaust any and all

20  administrative remedies before filing a case in federal court.  <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 85

21  (2006).  "Proper exhaustion demands compliance with an agency's procedural rules because no

22

23

24         [1] To the extent Defendants seek dismissal of the action under Federal Rule of Civil Procedure 4(m), the Court
25  denies the motion, because the Court can find no delay on Plaintiff's part in serving the summons and complaint.  It was
    not unreasonable for Plaintiff to wait until the magistrate judge ruled on his motion to proceed *in forma pauperis* before
26  serving the summons and complaint.  Plaintiff then served the summons and complaint within one hundred and twenty
    (120) days of the magistrate's order.

4

1  adjudicative system can function effectively without imposing some orderly structure on the course

2  of its proceedings." Id. at 90-91.

3        A motion to dismiss for failure to exhaust nonjudicial remedies is treated as an unenumerated

4  12(b) motion.  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a motion to

5  dismiss for a failure to exhaust  nonjudicial remedies, the court may look beyond the pleadings and

6  decide disputed issues of fact.  See id. at 1119-20, citing Ritza v. Int'l Longshoremen's &

7  Warehousemen's Union, 837 F.2d 365,  369 (9th Cir. 1988).  If the district court concludes that the

8  prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without

9  prejudice.  See id. at 368 n.3 (1988).  The exhaustion requirement applies to all prisoner suits about

10 prison life, whether they involve general circumstances or a particular episode, including excessive

11 force.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).

12       The Sutter County Jail has a Policy in place whereby inmates are to file written grievances

13 regarding all complaints pertaining to conditions of confinement.  If an inmate is not satisfied with

14 the resolution of the grievance, he or she may file an appeal with the Jail Commander.  If the inmate

15 is not satisfied with the Jail Commander's resolution, an appeal may be filed with the Undersheriff.

16 If the inmate is not satisfied with the Undersheriff's resolution, a final appeal may be made to the

17 Sheriff.

18 ***Plaintiff's First Claim for Relief***

19       Plaintiff's First Claim for Relief is a 42 U.S.C. §1983 claim based on allegations that

20 Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

21 Specifically, Plaintiff claims his rights were violated when Defendants allegedly used excessive force

22 on June 11, 2007, August 6, 2007 and November 5, 2007.

23       Here, Plaintiff's First Claim for Relief is based, in part, on an alleged assault by Adams on

24 June 11, 2007, the denial of medical care following that incident, and an alleged assault by Barnec on

25 August 6, 2007.  The only grievance that even arguably addresses any of those allegations was filed

26 by Plaintiff on August 16, 2007.  That grievance alleges "I was in a situation where I was beaten by

1    C.O.'s[.]" The grievance also contains Plaintiff's demand to be seen for x-rays on his hips.  The

2    grievance did not identify the dates of the alleged assault or who was involved.  However, an

3    investigation was launched.  While that investigation was pending, Plaintiff submitted a

4    supplemental statement that purportedly provided additional information regarding his allegations.

5    That statement is rambling and largely incoherent.

6            However, it does list June 11, 2007 and suggests that Plaintiff was shoved by Adams.

7    Specifically, it states:

8            6-11-07 C.O. Adams to empty the inmates of the basement. I talk my attorney not to
             ask. What she talk me? C.O. Adams shove me in the cell too basement. hard shove
9            my back, why? Me attourney to talk me? And shove me hard in the stairs.  (my
             paraphrase) my inadequate.  Too talk to Judge. Aware my mumble loud my innocent.
10           My injury hospital. *Id* [errors in original].

11   The only mention of August 6, 2007 in that supplemental statement is a note that states:

12           8-6-07 into the Court. I said "Honor." I cannot hear the Judge. I said, "Honor" Judge,
             my paper very to Hand "Temporary Restraining Order." I tell to Hand me (not
13           attourney) Someones not Talk me. Ignominious The to Court, Not Talked Someone's.
             My Pelvis MRI at Fremont. Not mend. My Great Pain in my Life of malpractice to
14           Jail Doctor of Last Year. I Louded my injurys in Court. Ignore. In Basement to CO.
             Tell me to the sitting. I Not seen my back pain! One and two painint too? eye Hards
15           Back or Padlock? Please Heal my Pain. *Id* [errors in original].

16   Even assuming that satisfies Plaintiff's obligation to file a grievance, he did not thereafter exhaust

17   the grievance procedures.  At the conclusion of an investigation into Plaintiff's allegations, the Sutter

18   County Sheriff's Department issued its determination, finding that no assault occurred on June 11,

19   2007 or August 6, 2007.  Regarding the alleged denial of medical care, the Department concluded

20   that Plaintiff received proper medical care because he was, in fact, seen and cleared by the Doctor.

21   Pursuant to the Department's Policy, Plaintiff had ten days to appeal the determination.  However, no

22   appeal was ever filed.  Therefore, Plaintiff failed to exhaust his administrative remedies with respect

23   to the uses of force that allegedly occurred on June 11, 2007 and August 6, 2007 as well as the

24   alleged denial of medical care following the June 11, 2007 incident.  These claims are dismissed.

25           Plaintiff's First Claim for Relief is also based on an alleged assault by Kehoe and Simpson on

26   November 5, 2007.  Plaintiff never filed a grievance regarding that alleged incident.  He filed

6

1   numerous grievances while he was in the custody of the Sutter County Jail.  However, none of those

2   grievances addressed an incident on November 5, 2007 or any other incident involving Kehoe or

3   Simpson.  Therefore, the Court dismisses these claims as well.

4   ***Plaintiff's Second Claim for Relief***

5          Plaintiff's Second Claim for Relief is a First Amendment retaliation claim brought pursuant

6   to 42 U.S.C. §1983.  Specifically, Plaintiff claims he was retaliated against for reporting physical

7   abuse.  The same PLRA exhaustion requirement applies to First Amendment retaliation claims. See

8   Simpson v. Feitsen, 2010 U.S. Dist. LEXIS 133993, 9-11 (E.D. Cal. 2010).  Plaintiff did not file any

9   grievances pursuant to the Sutter County Jail's grievance policy regarding any retaliation for

10  reporting alleged abuse. Therefore, Plaintiff failed to exhaust his administrative remedies and his

11  Second Claim for Relief is dismissed.

12  ***Plaintiff's Fourth Claim for Relief***

13         Plaintiff's Fourth Claim for Relief asserts an alleged violation of the ADA based on

14  allegations that Plaintiff was denied proper medical care for disabilities resulting from a stroke he

15  had before he was incarcerated. He also claims he was discriminated against because he had a stroke.

16  The PLRA exhaustion requirement applies to all claims brought by inmates, including those under

17  the ADA.  See O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007).

18  Here, Plaintiff did not file any grievance alleging that he was discriminated against because of a

19  stroke or that he was denied medical care for that stroke.  Therefore, Plaintiff failed to exhaust his

20  administrative remedies and this claim is dismissed.

21  ***Plaintiff's Third, Fifth and Sixth Claims for Relief***

22         California state law imposes the same administrative exhaustion requirement for state law

23  claims as the PLRA does for federal claims.  Wright v. State of Cal., 122 Cal. App. 4th 659, 666

24  (Cal. App.3d 2004).  Under state law, "exhaustion of the administrative remedies is a jurisdictional

25  prerequisite to resort to the courts." Id. at 665. That includes actions brought by prisoners with

26

7

1   respect to prison conditions.  In re Dexter, 25 Cal.3d 921, 925 (1979) (holding that "[t]he

2   requirement that administrative remedies be exhausted applies to grievances lodged by prisoners").

3          Plaintiff's Third, Fifth and Sixth Claims for Relief are state law claims based on the same

4   allegations as Plaintiff's First Claim for Relief.  As set forth above, Plaintiff failed to exhaust the

5   Sutter County Jail's grievance procedures with respect to those allegations.  Therefore, just like his

6   federal claims, Plaintiff failed to exhaust his administrative remedies for his Third, Fifth and Sixth

7   Claims for Relief.  Therefore, these claims are dismissed because Plaintiff failed to exhaust the

8   administrative remedies for his state law claims.

9   III.  Government Tort Claims Act

10          Plaintiff's Third, Fifth and Sixth Claims for Relief are state law claims based on allegations

11   that Defendants used excessive force on three separate occasions, Plaintiff claims that Adams used

12   excessive force in June of 2007, Barnec used excessive force on August 6, 2007 and Simpson and

13   Kehoe used excessive force on November 5, 2007.  As a mandatory prerequisite to bringing state law

14   claims based on those alleged incidents, Plaintiff was required to file a government tort claim under

15   Government Code §910 et seq., Cal. Govt Code §§905, 911.2, 945, 950.2; Schneider v. Amador

16   County, 2011 U.S. Dist. LEXIS 98466, 20 (E.D. Cal. 2011).  However, Plaintiff never filed a

17   government tort claim regarding the incident involving Adams. The only government tort claims he

18   filed addressed the November 5, 2007 and August 6, 2007 incidents involving Kehoe, Simpson and

19   Barnec.  Therefore, Plaintiff's state law claims against Adams and Sutter County, based on the

20   alleged incident involving Adams, are dismissed.

21   IV.  Conclusion

22          Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's

23   Second Amended Complaint (#45) is **GRANTED**;

24   ///

25   ///

26   ///

8

1        IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants

2   and against Plaintiff.

3        DATED this 28th day of September 2012.

4

5

6                                    _____
                                     Kent J. Dawson
7                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26